**DAVID J. HOLDSWORTH (4052)**
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | | |
|---|---|---|
| CHERYL C. BURGESS, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UTAH STATE UNIVERSITY, BRAD | : | |
| L. MORTENSEN, President, UTAH | : | |
| STATE UNIVERSITY, in his official | : | |
| and individual capacities, | : Civil No. 1:26-cv-122 | |
| | : | |
| Defendants. | : Hon. | |

COMES NOW the Plaintiff, Cheryl C. Burgess, complains of Defendants

Utah State University, and Brad L. Mortensen, current President of Utah State

University, and demands trial by jury as to all issues triable to a jury, and as and for

facts and causes of action, alleges as follows:

**PARTIES**

1.    Ms. Burgess is a citizen of the United States and, at all times

relevant hereto, was a resident of the State of Utah.

2.      The entity Plaintiff names as a Defendant herein is Utah State University.  Utah State University is part of the Utah System of Higher Education, which is a political subdivision of the State of Utah.  Utah State University ("USU") is an "employer" within the meaning of Title VII which does business in Cache County in the State of Utah.

3.      Plaintiff also names as a Defendant herein Brad L. Mortensen. Brad L. Mortensen is the current President of Utah State University and is named in his official and individual capacities.

**JURISDICTION AND VENUE**

4.      This action is brought pursuant to the Civil Rights Act of 1964, as amended, for discrimination in employment and other areas.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000 e (5).  Equitable and other relief are also sought under 42 U.S.C. § 2000 e (5) (g).  Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.  This action is also brought under 42 U.S.C. § 1983, for deprivation by a state actor of a property interest without due process of law and for denial by a state actor of the equal protection of the law.  This action is also brought under the Utah State Code relating to retirement for employees of the state system of higher education.  The Court has supplemental jurisdiction over claims brought by Plaintiff sounding in state law and common law.

5.      Venue is properly laid in this Court in that the actions and inactions alleged herein to create liability occurred in the federal district of Utah.

## STATEMENT OF FACTS

6.      Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 5 above as if alleged in full herein.

## BACKGROUND

7.      Plaintiff alleges that, in approximately 1987, she began working full-time for USU.

8.      On information and belief, Plaintiff alleges that, when she began working for US in 1987, USU enrolled her in the Utah State Retirement System(s) ("URS") retirement plan for employees of state institutions of higher learning, including USU.

9.      Plaintiff alleges that, during her employment with USU in 1987–1988, she assisted the USU Provost's Office in a matter involving allegations that her boss at the time had engaged in illegal activities, including sexual harassment of student employees, financial theft, and discrimination against international students. Plaintiff provided evidence during USU's investigation of her boss and otherwise assisted the Provost's Office.  Because of the on-the-job stress Plaintiff was experiencing caused by her providing assistance to the Provost's Office in

3

documenting the actions of her boss, Provost Peter Wagner offered Plaintiff a position in any department on campus.  However, because of such stress and other concerns, at that time, Plaintiff chose to leave employment with USU and work elsewhere.  This was the reason she left employment with USU in 1988.

10.  From the Fall of 1997 to the Fall of 1998, Plaintiff began to work for the State of Utah in that she started working on a part-time basis for the Bridgerland Applied Technology Center ("BATC").  BATC is also a part of the Utah system of higher education.  In the Fall of 1998, Plaintiff became a full-time instructor for BATC.  She alleges URS provided retirement plan coverage for employees of BATC.  From 1998 to 2002, she taught on a full-time for BATC (BATC has been renamed the "Bridgerland Technology College").  Plaintiff alleges that, from 1998 to 2002, BATC, under the direction of Chad Campbell, who oversaw employee benefits at the time, denied Plaintiff the right to receive any fringe benefits, including being enrolled again in the URS retirement plans for employees of state institutions of higher learning.  Plaintiff alleges that, while working as a full-time employee for BATC, even though she requested the fringe benefits that she was entitled to earning such as retirement benefits and credits, she was never given such benefits and she eventually left the employment of BATC in April 2002 to work for Preston High School (in Idaho), where she would be in an employment setting where she would receive such

4

benefits.  On information and belief, Plaintiff alleges that Campbell gave them to her replacement on hire, who was a male (Rex Nethercott), access to all of such fringe benefits.

11.    Plaintiff alleges that, from 2002 to 2016, she worked for Weber State University in a part-time position, as an adjunct lecturer, which position did not carry with it any right to fringe benefits.

12.    Plaintiff alleges that, in 2014, she returned to employment with USU to teach on a part-time basis as an adjunct faculty member for the Jon M. Huntsman School of Business at USU.  From 2014 to 2015, she taught in such a part-time position without benefits.

13.    Plaintiff alleges that, in 2015, she began working on a full-time basis for USU in the School of Business (her current department).

14.    Plaintiff alleges that, in 2014 and 2015, no one associated with USU ever asked her about whether she had worked previously for USU on a part-time or full-time basis.

15.    Plaintiff alleges that, on August 26, 2015, she met with a USU Human Resources representative (who was a female employee believed to be either Marla Boyer ("Boyer"), Senior Associate Director of Human Resources, or Julie Ball ("Ball") Coordinator of Benefits).

16.     Plaintiff alleges that, on August 26, 2015, she met with as representative of USU Human Resources to complete hiring paperwork as a full-time teacher (lecturer) for the Jon M. Huntsman School of Business at USU.

17.     Plaintiff alleges that, on August 26, 2015, when she was completing paperwork to transition to a full-time teaching position at USU, she remembers telling the USU Human Resources representative who was helping her with the process of onboarding her as a full-time employee, that she had worked full-time for BATC from 1998 to 2002, but had been denied benefits and that she had also worked on a part-time basis for USU from 2002 to 2016.

18.     Petitioner alleges that, in her meeting with the representative from USU Human Resources, which was held in the Human Resources small conference room, she specifically requested to be able to participate in the Utah Retirement System ("URS") retirement benefits/pension.

19.     At the time, Plaintiff's husband was working as a full-time employee of USU and was covered by URS retirement benefits/pension. Accordingly, with USU rehiring Plaintiff to work on a full-time basis, she fully anticipated that USU would also enroll her in URS retirement benefits/pension. However, she alleges that, during the August 26, 2015, meeting, the USU Human Resources representative told her two things relating to URS benefits: (1) USU no longer offered URS benefits to

new employees; and (2) she was not eligible to participate in the URS retirement system.

20.    On information and belief, Plaintiff alleges such information was inaccurate and incomplete.

21.    Plaintiff alleges that, during the August 26, 2015, when she requested enrollment with URS and was denied the opportunity to be enrolled in the URS retirement benefits/pension, such was a violation of USU policy.  On information and belief, Plaintiff alleges USU Policy No. 3112 (formerly Policy 361) states that, once an employee was enrolled in URS, such employee is able to enroll again in URS. *See* 3.1 (4): Policy 3112: Retirement Plans and Retirement Benefits/USU.  Thus, Plaintiff alleges she should have been able to re-enroll again in URS and should have been told that she could re-enroll again in URS.

22.    Plaintiff alleges that, during the August 26, 2015 meeting, the USU Human Resources employee handed her a form to sign.  The form stated she was not eligible to receive URS benefits, which Plaintiff found out later was not true.  Said form did not state that she was agreeing to waive her right to receive URS benefits.

23.    Plaintiff further alleges that she was directed by USU Human Resources to complete initial payroll paperwork through the Jon M. Huntsman School

of Business, which she did, with the help of Jennifer Barton (Business Services) and

Taci Watterson (MIS/DAIS Department), which Plaintiff did.

24.     Plaintiff alleges that, even though she completed the paperwork in

the Human Resources office on August 26, 2015, "Banner" (the USU

payroll/employee system) shows her hire date as a full-time employee being August 1,

2015.

25.     On information and belief, Plaintiff alleges that, soon after

Plaintiff's meeting with USU Human Resources representative on August 26, 2015,

Boyer was instrumental in changing USU Human Resources policy so that new

employees were no longer eligible to enroll in URS retirement benefits/pension,

effective October 1, 2015, as stated in November 2, 2015, USU Faculty Senate

Minutes.

26.     Plaintiff alleges that, on September 20, 2024, for the first time

since she had been rehired by USU to work on a full-time basis, she attended a

Faculty/Staff Appreciation Day food and information fair.  The event was held by the

football stadium.  Plaintiff alleges that, while at the event, she noticed a URS booth.

She alleges she approached the booth and began a conversation with a gentleman by

the name of Ben Smedley ("Smedley"), who identified himself as a URS retirement

planning advisor.  She alleges she informed Smedley that she was surprised to see URS

at this event because she had been told by USU Human Resources in August 2015 that URS no longer covered USU employees with retirement benefits/pension.  She asked Smedley if he was in attendance to assist employees who had worked with USU back when URS had covered USU employees.  Plaintiff alleges that, to her surprise, Smedley informed her that USU had always used URS and had never broken off their association with URS.

27.     Plaintiff alleges that, during her conversation with Smedley, Smedley asked her the following question: "Have you worked full-time for an employer covered by URS prior to working here now?"  Plaintiff responded that she had worked full-time for USU in the late '80s.   Smedley replied, "Then you have an affiliation with URS.  You're in the [URS] system."  He encouraged Plaintiff to contact URS to help her establish a login to be able to check her status as an enrollee in the URS system.

28.     Plaintiff alleges that, in that September 20, 2024 conversation, Smedley then directed her to the USU Human Resources booth/table where she was informed that she should talk to Lisa Leishman ("Leishman"), Associate Director of Human Resources for USU.  Plaintiff alleges Leishman was busy at the time, so she went to her car and sent an e-mail to Leishman requesting a meeting with Leishman to which Leishman agreed.

9

29.    Plaintiff alleges that she believes that, had she attended this Faculty/Staff Appreciation Day event in a previous year, she might have found out sooner that URS was still covering USU employees, but this September 20, 2024, encounter was the first notice she had received since her August 26, 2015, meeting described above, that URS was still covering USU employees.

30.    Plaintiff alleges that, on October 24, 2024, she and her husband, Alma James Burgess, met with Leishman.

31.    Plaintiff alleges that, on October 24, 2024, during the meeting where she, her husband and Leishman were present, Leishman made a discriminatory statement to Plaintiff.  While addressing Plaintiff, Leishman pointed a hand toward Plaintiff's husband, stating the Plaintiff should be "happy" with being able to participate in a 401 (a) plan with TIAA/Fidelity retirement savings vehicle as a full-time employee with USU (instead of URS retirement benefits/pension) because she had a husband who had a URS pension and that was "good enough".  Leishman further lamented how she, herself, did not have a husband and wasn't as fortunate as Plaintiff. Plaintiff alleges that the fact that her husband had a URS pension should not be a basis for denying her right to be re-enrolled in URS retirement benefits/pension and eventually receive a URS pension.

32.     Plaintiff alleges that, on October 30, 2024, she received an e-mail from Leishman, stating, "After some research, I found out the reason you were not offered URS upon rehire in 2015 was because all exempt and faculty positions at that time were only offered a 401 (a) plan with TIAA/Fidelity."  Plaintiff alleges that this e-mail supports her memory of being told in 2015 that USU no longer offered URS retirement benefits to employees, which she alleges was untrue and supports her allegation that, in 2015, she was wrongfully denied access to URS benefits upon rehire.

33.     Plaintiff alleges that, soon after her October 24, 2024, meeting with Leishman and Leishman's e-mail of October 30, 2024, she contacted URS to see if there was a record of her previous enrollment in the USU retirement/pension plan. URS informed Plaintiff that, in 1988, USU had made payments in her name to the URS pension plan and again in August 2015 when USU rehired her, it had made a single payment in her name into the URS pension plan.  Plaintiff alleges she then set up an account and logged into the URS system for the first time and printed out a payment history.  The payment history by USU to her URS account.  Said payment history confirms the allegations set forth above in this paragraph.

34.     Plaintiff alleges that the payment in August 2015 by USU into the URS pension system on her behalf is evidence that USU Human Resources was aware of her eligibility at the time of her rehire in August 2015, but knowingly or negligently

11

hid this information from her on August 26, 2015, when she asked for URS benefits in her meeting with Human Resources and USU Human Resources denied her the opportunity to re-enroll with URS and asked her to sign of paper of ineligibility.

35.     In other words, Plaintiff alleges that, in August 2015, USU Human Resources knew, or should have known, she was eligible for enrollment or re-enrollment in the URS retirement/pension system, but told her otherwise, and that USU actually enrolled her and then unenrolled her in the URS retirement/pension system, all without her knowledge.

36.     Thus, Plaintiff alleges that, in late 2024, she became aware that, not only was she enrolled in the URS system, but that, in 2015, the very month Human Resources had told she was not eligible for coverage in the URS system, USU had made a contribution into her URS account.

37.     Plaintiff alleges that, until she started digging further, she was unaware that she had an account with URS and a URS membership ID and she believes this to be the case for several reasons:

    a.     In 1988, when Plaintiff last worked full-time for USU, she was in her twenties, expecting her first child, concerned with paying the rent and having health insurance, not looking at retirement and pensions.  At the time,

Plaintiff did not realize that her job working for USU Hub Food Services was covered under the URS retirement/pension system.

b.      She left USU employment within the year before the next enrollment period when URS benefits would have been reviewed.

c.      When she taught full-time for BATC, a URS affiliated employer, from 1998 to 2002, BATC denied her full-time benefits.  This was her longest stint in full-time teaching for the State of Utah prior to 2015. Seeking retirement plan benefits was the driving force behind her leaving BATC in 2002 to cross the border to teach in Idaho from 2002 to 2015.  Plaintiff alleges that her replacement at BATC was a male who was given benefits upon hire.  She remembers mentioning this to the USU Human Resources representative in 2015.

d.      Plaintiff alleges that, had she been asked in 2015 whether she had ever worked full-time for USU, she have said "yes", and could have learned at that point in time that she had been enrolled in the URS system and could be re-enrolled in the URS system.

e.      Plaintiff worked full-time at USU for less than a year in 1988 and didn't receive any correspondence from URS until she created a login

in 2024.  She confirmed with URS that it had not sent any correspondence to her prior to setting up a login at http://urs.org.

38.    Plaintiff alleges that, since 2015, she has continued to work on a full-time basis with USU (and is currently working for USU on a full-time basis), but USU has not enrolled or re-enrolled her in the URS retirement/pension system.

39.    Plaintiff alleges USU's failure to enroll/re-enroll her in the URS retirement/pension system in 2015, and at all points in time thereafter, and the misinformation USU has given her since 2015, and the information it has failed to give her since 2015, has caused serious damage to her finances, retirement and future.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

40.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 39 above as if alleged in full herein.

41.    Plaintiff alleges that, as a full-time employee faculty member with USU since 2015, she had a contract with USU as to her ability to participate in and receive all the fringe benefits to which she was entitled by virtue of her past and present full-time employment with USU.

42.    Plaintiff alleges that one such benefit was the ability to participate in the URS retirement/pension plan on a grand-fathered basis because she had worked

for USU in 1987–1988 and, at that time, had been enrolled in the URS retirement/pension plan and because USU had re-enrolled her in the URS retirement pension plan in 2015 for a short period before un-enrolling her.

43.    Plaintiff alleges that, by its actions and inactions, as alleged above, USU had breached said contract.

44.    Plaintiff alleges that such breach has caused her financial losses and other injuries and damages.

**SECOND CAUSE OF ACTION**
**DEPRIVATION OF PROPERTY INTEREST**
**WITHOUT DUE PROCESS OF LAW**

45.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 44 above as if alleged in full herein.

46.    Plaintiff alleges that, as a full-time employee faculty member with USU since 2015, she had a property interest in her employment and in the terms and conditions of such employment, including all fringe benefits which such employment provided her with the opportunity to earn and receive.

47.    Plaintiff alleges that one such benefit was the ability to participate in the URS retirement pension plan on a grand-fathered basis because she had worked for USU in 1988 and that, at the time, had been enrolled in the URS retirement pension

plan and because USU had re-enrolled her in the URS retirement pension plan for a short period before un-enrolling her.

48.    Plaintiff alleges that the Defendants could not deprive her of such property interest without providing her due process of law.

49.    Plaintiff alleges that, by engaging in the actions and inactions set forth above, Defendants have deprived her of such property interest without due process of law, in violation of the 14th Amendment to the U.S. Constitution, made actionable by 42 U.S.C. § 1983, which has caused her financial losses, injuries and other damages.

**THIRD CAUSE OF ACTION**
**DENIAL OF EQUAL PROTECTION**

50.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 49 above as if alleged in full herein.

51.    Plaintiff alleges that, as a full-time faculty member of USU since 2015, she had a right to the equal protection of the law.

52.    Plaintiff alleges that one such aspect of the law was the ability to participate in the URS retirement/pension plan on a grand-fathered basis because she had worked for USU in 1987–1988 and that, at the time, had been enrolled in the URS retirement pension plan and because USU had re-enrolled her in the URS retirement pension plan in 2015 for a short period before un-enrolling her.

53.    Plaintiff alleges that the Defendants could not deprive her of such equal protection of the law without providing her due process of law.

54.    Plaintiff alleges that, by engaging in the actions and inactions set forth above, Defendants have deprived her of such equal protection of the law, in violation of the 14th Amendment to the U.S. Constitution, made actionable by 42 U.S.C. § 1983, which has caused her financial losses, injuries and other damages.

## FOURTH CAUSE OF ACTION
## VIOLATION OF UTAH CONSTITUTION

55.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 54 above as if alleged in full herein.

56.    Plaintiff alleges that, by engaging in the actions and inactions set forth above, Defendants have also violated her rights to property and equal protection provided to her under the Utah Constitution, which has caused her financial losses, injuries and other damages.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION

57.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 56 above as if alleged in full herein.

17

58.     Plaintiff alleges that Defendants have sanctioned and ratified a difference in treating Ms. Burgess in terms of her eligibility to participate in the URS retirement/pension plan that is based on Ms. Burgess' sex.

59.     Plaintiff alleges such actions and inactions constitute a violation of the Civil Rights Act of 1964, and the Equal Pay Act, which has caused her financial losses, injuries and other damages.  *See Newport News Shipbuilding and Dry Dock Co. v. EEOC,* 462 U.S. 669 (1983).  *See also* 29 C.F.R. § 1604.9 (a).

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY — UTAH CODE

60.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 59 above as if alleged in full herein.

61.     Plaintiff alleges Defendant USU had a fiduciary responsibility under the Utah Retirement Code to its employees to make sure that it presented true information with respect to fringe benefits available to them.

62.     Utah Code 49-11-103, Purpose – Liberal construction: (1) The purpose of this title is to establish: (a) retirement systems and the Utah Governors' and Legislators' Retirement Plan for members which provide: (i) a uniform system of membership; (ii) retirement requirements; (iii) benefits for members; (iv) funding on an actuarially sound basis; (v) contributions; and (vi) economy and efficiency in public service; and (b) a central administrative office and a board to administer the various

18

systems, plans, and programs established by the Legislature or the board; (2) This title shall be liberally construed to provide maximum benefits and protections consistent with sound fiduciary and actuarial principles (amended by Chapter 10, 2018 General Session).

63.     Plaintiff that, by engaging in the actions and inactions set forth above, Defendant USU has breached its fiduciary duties to Plaintiff, causing her financial losses, injuries and other damages.

## SEVENTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY — COMMON LAW

64.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 63 above as if alleged in full herein.

65.     Plaintiff alleges DEFENDANT USU had a fiduciary responsibility at common law to its employees to make sure that it presented true information with respect to fringe benefits available to them. *See Hughes v. Northwestern University,* 595 U.S. 170 (2022).

66.     Plaintiff alleges that, by in engaging in the actions and inactions set forth above, Defendant USU breached such fiduciary duty to Plaintiff, causing her losses, injuries and other damages.

## EIGHTH CAUSE OF ACTION
## MISREPRESENTATION—INTENTIONAL
## MISREPRESENTATION AND/OR OMISSION

19

67.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 66 above as if alleged in full herein.

68.    Plaintiff alleges that, by engaging in the actions and inactions set forth above, Defendant USU intentionally made misrepresentations to Plaintiff and/or intentionally failed to disclose or convey material information to Plaintiff regarding her retirement benefits and options.

69.    Plaintiff alleges that she relied on such material misrepresentations and/or material omissions and changed her position to her detriment.

70.    Plaintiff alleges such misrepresentations and omissions and her reliance upon the same has caused Plaintiff financial losses, injuries and other damages.

## NINTH CAUSE OF ACTION
## MISREPRESENTATION — NEGLIGENT
## MISREPRESENTATION AND/OR OMISSION

71.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 70 above as if alleged in full herein.

72.    Plaintiff alleges that Defendant USU had a duty to exercise due care to make sure that information it was providing to Plaintiff regarding her ability to participate in whatever fringe benefits USU offered to its employees, including retirement benefits and options, was true, accurate and complete.

73.    Plaintiff alleges that, by engaging in the actions and inactions set forth above, Defendant USU breached the duty to make sure the information it was providing to Plaintiff regarding her ability to participate in USU fringe benefits was true, accurate and complete, causing Plaintiff financial losses, injuries and other damages.

## IV.  DAMAGES

74.    Ms. Burgess alleges Defendants' actions and inactions have caused her various injuries, losses, and other damages, including lost retirement benefits, lost retirement benefit growth and financial stress.

75.    Plaintiff alleges Defendants' actions have caused her mental anguish and emotional distress.

## COMPLIANCE WITH GOVERNMENTAL
## IMMUNITY ACT OF UTAH

76.    To the extent Plaintiff is asserting any claims against Defendant USU as to which she needed to comply with the Governmental Immunity Act of Utah, Plaintiff alleges that she has complied with the Governmental Immunity Act of Utah, specifically, Utah Code § 63G-7-401, by filing a written Notice of Claim with the governmental entity (USU and its agents) against whom Ms. Burgess is choosing to assert claims arising out of an intentional failure or a negligent failure to provide relevant information which Ms. Burgess requested and needed in connection with her

ability to participate in certain retirement benefits available to Ms. Burgess by virtue of her employment with Utah State University. The facts forming the basis for Ms. Burgess' claim were asserted in said Notice of Claim, which complied with § 63G-7-401 (2) and containing the information called for in § 63G-7-401 (3) (a).

77.     Pursuant to § 63G-7-401 (3) (b) (i), this Notice of Claim was signed by Ms. Burgess and also signed by the undersigned as the attorney for Ms. Burgess.

78.     Pursuant to § 63G-7-401 (3) (b) (ii), this Notice of Claim was duly delivered, transmitted or sent to the persons listed in (3) (b) (ii) (E) (F) and (G).

79.     Pursuant to § 63G-7-401 (3) (c) (ii), this Notice of Claim was transmitted by mail to the physical address provided under § 63G-7-401 (5) (a) (iii) (A), according to the requirements of Utah Code § 68-3-8.5, and was also sent by electronic mail to the email address provided under § 63G-7-401 (5) (a) (iii) (B).

80.     Consistent with § 63G-7-401 (3) (d), the undersigned also contemporaneously sent a copy of the Notice of Claim by electronic mail to the attorney general and the general counsel of Utah State University, who represents Utah State University (this is believed to be Mica McKinney).

**EXHAUSTION OF ADMINISTRATIVE PROCESSES AND REMEDIES**

22

81.    Ms. Burgess asserts that she has exhausted any and all required administrative processes and remedies.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations as to facts, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1.    Awarding Ms. Burgess "make whole" relief, including awarding Ms. Burgess her URS retirement pension in full, fully funded form from August 2015 to the present, restoring what was lost when USU removed her from the URS system in 2015, and reinstatement of her URS retirement pension benefits in full, as if they had never been denied, from August 2015 through the present and continuing until her future retirement date;

2.    Awarding Ms. Burgess damages for financial stress, mental anguish and emotional distress;

3.    Awarding Ms. Burgess her reasonable attorney's fees and costs;

4.    Awarding Ms. Burgess such other relief as may be just and equitable.

DATED this 30th day of July, 2026.


_/s/ David J. Holdsworth_
David J.  Holdsworth
*Attorney for Plaintiff*

## VERIFICATION

Cheryl C. Burgess, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.

_/s/ Cheryl C. Burgess_
Cheryl C. Burgess

SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 20___.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:          RESIDING AT: _____

_____